# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOSEPH NELUMS,

      Plaintiff,

vs.                                           Civ. No. 2:22-828 KRS/GBW

MANDU WELLNESS, LLC,
AARON MANDUJAN,
BRIAN PATRICK STICKNEY, and
777 BRANDS, LLC,

      Defendants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 4). Plaintiff filed a response to the Motion to Dismiss and Defendants have filed a reply. (Docs. 11 and 14). Also before the Court is Plaintiff's Motion to Exceed Page Limits, to which Defendant filed a response and Plaintiff filed a reply. (Docs. 12, 13, and 15). Pursuant to 28 U.S.C. § 636, the parties have consented to the undersigned to preside over this matter and enter final judgment. (Docs. 6, 9, and 10). Having considered the parties' briefing, record of the case, and relevant law, the Court grants Plaintiff's Motion to Exceed Page Limits, grants Defendant's Motion to Dismiss, dismisses Plaintiff's claims against Defendants 777 Brands, LLC, Stickney, and Mandujan without prejudice for lack of jurisdiction, and dismisses Plaintiff's claims against Defendant Mandu Wellness, LLC with prejudice for failure to state a claim.

## I.    **Background**

Plaintiff alleges that Defendants are sellers of a male enhancement product and that Defendants "formulated, directed, controlled, had the authority to control, ratified and/or

substantially participated in" sending him and others unlawful text messages. (Doc. 1-1) at 9.

Plaintiff states he received text messages that "were indecent, obscene and designed to arouse the

viewer's prurient interest in Defendants' 'Alpha State male enhancement support' product. *Id.* at

13. The text messages had a web-based internet link, and Plaintiff "followed the instructions in

Defendants' text messages to Plaintiff to view more advertising." *Id.* at 14. Plaintiff states he

purchased the product in order to identify the senders of the text messages and was able to link

Defendants to the internet site and the customer-service call center phone number on the

packaging of the product that he purchased. *Id.* at 15-16. Specifically, Plaintiff alleges that

Defendant Mandu Wellness, LLC sold Plaintiff the product and collected the money from him,

and that Defendant 777 Brands, LLC is the proprietor of the website where he bought the

product as well as the "end-user assignee" of the customer-service phone number that Plaintiff

called. (Doc. 11) at 12. Plaintiff states that Defendant Mandujan is the sole member and

manager of Mandu Wellness LLC, and Defendant Stickney is the sole member and manager of

777 Brands LLC. *Id.*

Plaintiff brings three claims against Defendants: (1) violation of the New Mexico Unfair

Practices Act ("NMUPA") because the text messages "cause confusion or misunderstanding as

to the source of the goods offered in a manner that may, tends to or does deceive or mislead

consumers," and because consumers must purchase the product being advertised in order to

identify the parties engaging in the unlawful telemarketing; (2) violation of the Telephone

Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), because the text messages were sent

with an auto-dialer; and (3) violation of the TCPA, 47 U.S.C. § 227(c), because Defendants or

Defendants' agents made telephone solicitations to Plaintiff more than once within 12 months

despite the fact that Plaintiff's phone number is listed in the National Do-Not-Call Registry.

(Doc. 1-1) at 18-21.  Plaintiff brings his claims on behalf of himself and a proposed nationwide class of other persons who received the telemarketing texts from or on behalf of Defendants.  *Id.* at 21-23.

Defendants move to dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction and for failure to state a claim.  Defendants assert the Court lacks general or specific jurisdiction over out-of-state Defendants 777 Brands, Stickney, and Mandujan, because they have not made the necessary minimum contacts with New Mexico.  (Doc. 4) at 10.  Defendants further argue that they are not liable under the TCPA or NMUPA for sending the text messages and that Plaintiff fails to allege essential elements to state a claim under either the TCPA or NMUPA.  *Id.*

In response, Plaintiff concedes the court does not have general jurisdiction over Defendants 777 Brands, Stickney, or Mandujan, but argues the Court has specific jurisdiction over these Defendants.  (Doc. 11) at 5-6.  In the alternative, Plaintiff asks the Court to allow him to conduct jurisdictional discovery to learn who sent the text messages.  *Id.* at 7.  Plaintiff further argues he has plead sufficient facts to support his claims and Defendants are either directly or vicariously liable under the TCPA and NMUPA because they have been deceptive about who sent the text messages.  *Id.* at 7-35.

In reply, Defendants maintain that the Court does not have jurisdiction over the out-of-state Defendants because they lack sufficient minimum contacts with New Mexico.  (Doc. 14) at 7-8.  Defendants oppose Plaintiff's request for jurisdictional discovery because his allegations are unsupported, based on speculation, and do not controvert Defendants' specific denials of personal jurisdiction.  *Id.* at 9-12.  Defendants also maintain that Plaintiff fails to state a claim under the TCPA and NMUPA.  *Id.* at 13-17.

3

## II.     <u>Plaintiff's Motion to Exceed Page Limitations</u>

The Court first considers Plaintiff's Motion to Exceed Page Limits, in which Plaintiff seeks to file a 32-page response brief, in excess of the 24 pages allowed by Local Rule 7.5. (Doc. 12).  Plaintiff states he needs the additional pages to address Defendants' jurisdictional argument and motion to dismiss for failure to state a claim.  Defendants oppose the requested page extension because it is "excessive, unjustified, and prejudicial to Defendants."  (Doc. 13) at 1.  Defendants contend that Plaintiff's response brief does not demonstrate the need for the additional pages and the extension prejudices Defendants because they have to address Plaintiff's over-length response in their reply.

The Court finds Plaintiff has provided sufficient support for an extension of page limits because Plaintiff must address Defendants' jurisdictional arguments as well as their motion to dismiss Plaintiff's federal and state claims based on failure to state a claim.  The Court finds that an additional eight pages for Plaintiff's response is not excessive, and Defendants could have requested an extension for their reply brief if they needed additional pages.  Therefore, the Court grants Plaintiff's Motion to Exceed Page Limits.

## III.     <u>Defendants' Motion to Dismiss for Lack of Jurisdiction</u>

Defendant Mandu Wellness is a New Mexico company, Defendant Mandujan is a California resident, Defendant 777 Brands is a Texas company, and Defendant Stickney is a Texas resident.  (Doc. 1-1) at 9.  Defendants first move to dismiss Plaintiff's claims against the out-of-state Defendants—777 Brands and the individual Defendants—for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  (Doc. 4) at 15.  Defendants contend that Plaintiff fails to allege specific facts tying 777 Brands or the individual Defendants to the text messages allegedly received by Plaintiff, such as the contents of the text messages, the number(s) from

which they were sent, the dates they were received, or other identifying information. *Id.* at 18.
Defendants submit declarations stating they never spoke to Plaintiff, did not direct others to send
text messages of the kind Plaintiff states he received, and were not otherwise involved in the
creation of the messages. (Doc. 4-1). Defendants assert that Plaintiff's allegations regarding the
text messages are speculative and do not support a finding of specific personal jurisdiction over
the non-resident Defendants. (Doc. 4) at 18-21. Defendants further argue that Plaintiff's
allegations against the entity Defendants cannot be imputed to the individual Defendants. *Id.* at
21-23.

Plaintiff responds that he has sufficiently alleged that Defendants are vicariously liable
for the text messages because the link in one of the text messages led to an internet site
promoting the sale of a product that Plaintiff then bought from Defendants. (Doc. 11) at 7-10;
18-22. The text messages "never identified any seller or sponsor of the texts and never provided
any means that Plaintiff noticed for a recipient of the texts to make a do-not-call request." *Id.* at
11. Nevertheless, because the product at the internet site was sold by Defendants, Plaintiff
argues that "the actual senders of the text-messages at issue were agents of Defendants under
Defendants' direction or control." *Id.* at 13. Plaintiff submits declarations by Plaintiff and his
counsel in support of his arguments. (Docs. 11-1, 11-2). In the alternative, Plaintiff asks the
Court to allow him to conduct discovery regarding "who may be directly liable for the texts and
who is in possession of the lead-lists of other phone numbers these texts were sent to." *Id.* at 8-9.

In their reply, Defendants maintain that Plaintiff has failed to identify any direct
connection between Defendants and the challenged text messages, and Plaintiff's vicarious
liability arguments are speculative. (Doc. 14) at 6-7. Defendants note that Plaintiff's affidavits
do not contradict Defendants' affidavits regarding their lack of contacts with New Mexico, so

Plaintiff has not met his duty to support a finding of jurisdiction. *Id.* at 7-9. Defendants oppose Plaintiff's request for jurisdictional discovery because he has not demonstrated a good-faith basis for asserting jurisdiction over the out-of-state Defendants or how additional discovery would support his jurisdiction argument. *Id.* at 9-10.

### A.  Legal Standard

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Thus, a court may "exercise personal jurisdiction over an out-of-state defendant who has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe*, 326 U.S. at 316).

When faced with a motion to dismiss for lack of jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that jurisdiction exists. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). A plaintiff's burden is light in the early stages of litigation before discovery such that the plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* The Court accepts as true all well-pleaded facts alleged by the plaintiff that are plausible, non-conclusory, and non-speculative, unless the defendant controverts those facts by affidavit. *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011). Additionally, the Court resolves factual disputes in the parties' affidavits in the plaintiff's favor. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

Personal jurisdiction may exist in two ways—general jurisdiction and specific jurisdiction.  A court has general jurisdiction over a defendant when the defendant's contacts with the state "are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919 (citation omitted).  In contrast, "specific jurisdiction … 'depends on an affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (citation omitted).  Because Plaintiff here does not assert the existence of general jurisdiction, *see* (Doc. 11) at 5, the Court considers whether it has specific jurisdiction over the non-resident Defendants.

Specific jurisdiction grows out of "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted).  If the "controversy is related to or 'arises out of' the defendant's contacts with the forum," specific jurisdiction exists. *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citation omitted).  The specific jurisdiction inquiry involves two steps.  First, the Court must determine whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1979)).  The Tenth Circuit has framed the "minimum contacts" test in the context of specific jurisdiction as "encompass[ing] two distinct requirements: 'first, that the out-of-state defendant must have purposefully directed its activities at residents of the forum state, and second, that the plaintiff's injuries must arise out of defendant's forum-related activities.'" *Shrader*, 633 F.3d at 1239 (quoting *Dudnikov*, 514 F.3d at 1071).  If a defendant's actions create sufficient minimum contacts, the second step of the specific jurisdiction inquiry is whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and

substantial justice." *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987).

### B.  Analysis

The parties have presented competing affidavits to support their personal jurisdiction arguments.  The out-of-state Defendants testify that they never called or texted Plaintiff, and they did not direct, control, or otherwise authorize any third parties to send text messages to Plaintiff. (Doc. 4-1) at 3, ¶¶10-14; at 7, ¶¶10, 12-15; and at 10, ¶¶7-11.  Specifically, Defendants state they never "approved, wrote, reviewed, or participated in developing the alleged text messages," they never "authorized any third parties to make outbound text messages," and "[i]n contracting with third parties to advertise the product at issue [they] contractually prohibited their use of SMS text messages." *Id.*  In response, Plaintiff and his counsel offer their own declarations stating Plaintiff received text messages that included "indecent or obscene language" that included a link that led to an internet site where Plaintiff "was able to view indecent or obscene visual imagery promoting the sale of the Alpha State product [Plaintiff] bought from Defendants." (Doc. 11-1) at 1, ¶2.  Plaintiff states that he was able to identify Defendants Mandu Wellness and 777 Brands after purchasing the product from the charges to his bank debit card and from calling a customer service phone number on the product's packaging.  *Id.* at 1-2, ¶¶ 3-11; *see also* (Doc. 11-2).

Importantly, Plaintiff's declarations do not contradict Defendants' assertions that they did not send the text messages and did not direct someone else to send them.  Indeed, Plaintiff states that the texts he received "never identified any seller or sponsor of the texts and never provided any means that I noticed for me to make a do-not-call request."  (Doc. 11-1) at 2, ¶6.  While the Court is required to resolve disputes in the parties' affidavits in favor of Plaintiff, it must only do

so for "plausible, non-conclusory, and non-speculative facts" that are not controverted by

Defendants by affidavit. *Shrader*, 633 F.3d at 1248. Plaintiff's assertions that Defendants sent

or were responsible for the text messages are based on speculation and Plaintiff fails to allege

any specific facts that show that Defendants texted Plaintiff or caused someone to text Plaintiff.

The only connection Plaintiff provides between Defendants and the text messages is that one of

the text messages contained a link that led to an internet site run by Defendant 777 Brands where

Plaintiff purchased a product sold by Defendant Mandu Wellness. While Plaintiff speculates that

these facts mean that Defendants were responsible for the text messages, he does not controvert

Defendants' affidavits disavowing having sent or directed others to send the messages.

       This court has dismissed several similar complaints filed by Plaintiff's counsel for lack of

personal jurisdiction. In *Childress v. Deering*, for example, the court found it lacked specific

personal jurisdiction over the defendant based on the defendant's affidavit that he never called

the plaintiff or directed anyone to make the alleged phone calls. 2019 WL 409825, at *4-5

(D.N.M.) ("*Childress II*"). Even though the plaintiff submitted information showing that the

address linked to the number used to call the plaintiff was identical to the defendant's address,

the court found this was insufficient because neither the financially responsible party nor the user

of the number was the defendant himself. *See id.* at *5 ("The fact that Deering's address is

associated with the phone number from which Childress received calls is insufficient to

contradict Deering's affidavit."). Likewise, in *Arnold v. BPCL Mgm't LLC*, the court found it

lacked personal jurisdiction where the defendant's representative provided a declaration stating

the defendant "did not direct or control the alleged telephone calls to Plaintiff and did not employ

any third parties to make outbound telemarketing calls of the kind Plaintiff alleged he received."

2017 WL 3534996, at *1-6 (D.N.M.). As is the case here, the plaintiff in *Arnold* did not identify

a dispute or "specify any statement in his Declaration that contradicts [the] representations that Defendant BPCL did not direct or control the alleged telephone calls to Plaintiff and did not employ any third parties to make outbound telemarketing calls of the kind Plaintiff alleges he received." *Id.* at *4.

Plaintiff relies on *Mestas v. CHW Group Inc.*, where the court found it had personal jurisdiction over defendants in a TCPA suit based on the plaintiff allegations that multiple calls he received were from phone numbers that were "assigned to and controlled by" the defendants. 508 F.Supp.3d 1011, 1017 (D.N.M. 2020).  In denying the defendants' motion to dismiss for lack of personal jurisdiction, the court emphasized that the defendants "have not submitted an affidavit or other written materials to controvert any of the factual allegations in the Amended Complaint" and, thus, "the jurisdictional findings in … *Childress*, and *Arnold* are of little persuasive value here." *Id.* at 1020.  Accordingly, the court accepted as true the plaintiff's allegations that connected the defendants to the calls and construed them in the light most favorable to Plaintiff.  *See id.* ("This is not a case where Plaintiff merely conclusorily alleged corporate officers' involvement in authorizing a telemarketing scheme, or only surmised that the caller and the defendant were connected.") (citations and internal quotation marks omitted).[1]  In contrast, the out-of-state Defendants here submitted affidavits denying any involvement with the text messages.  Accordingly, the facts of this case align with *Childress II* and *Arnold*—not *Mestas*.

---

[1] The facts in *Mestas* further differ from this case because the plaintiff there alleged he was transferred from a telemarketer to the in-house call center for the defendant and then received two subsequent calls in which the telemarketer "identified the seller or sponsor of the calls as [the defendant]."  508 F.Supp.3d at 1017.

Plaintiff also points the Court to *Miceli v. Spinnaker Resorts*, where the court found a factual dispute as to whether the defendant maintained an agency relationship with the parties who made the telemarketing calls.  2021 WL 1122658, at *1, 5 (D.N.M.).  The plaintiff in *Miceli* received telemarketing calls from persons who sold him a vacation package with defendant Spinnaker Resorts.  While the defendant denied making the calls or having control over those who did, the court found a sufficient showing of a possible agency relationship between the callers and defendant because the callers stated they represented Spinnaker Resorts and plaintiff provided evidence that the marketing vendors and defendant may be part of the same family of companies.  *Id.* at *3-4.  The court, therefore, allowed plaintiff to conduct jurisdictional discovery into the agency relationship between the marketers and defendant.  Regardless, the *Miceli* holding is distinguishable because Plaintiff here acknowledges the text messages did not identify Defendants.  Plaintiff presents nothing similar to the evidence in *Miceli* that suggested the defendant's agents made the calls.  Indeed, the court in *Miceli* emphasized that a credit card charge by a merchant associated with the defendant and evidence that the defendant operated a website associated with the vacation package, were "not sufficient to establish minimum contacts."  *Id.* at 4.

Based on the foregoing, the Court finds that Plaintiff has failed to demonstrate that the out-of-state Defendants have sufficient minimum contacts with New Mexico for the Court to exercise jurisdiction over them.  Because the Court finds that minimum contacts are lacking, it does not address whether exercising personal jurisdiction over these Defendants would offend traditional notions of fair play and substantial justice.  *See Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 965 (10th Cir. 2022) ("Here, because we ultimately conclude that Mr. Jayson does not have the minimum contacts necessary to support the exercise of specific jurisdiction over him in

Wyoming, we need not determine whether the exercise of personal jurisdiction over Mr. Jayson would 'offend traditional notions of fair play and substantial justice.'") (citation and internal brackets omitted).  The Court, therefore, dismisses Plaintiff's claims against Defendants 777 Brands, LLC, Stickney, and Mandujan without prejudice, pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  *See, e.g., Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.") (emphasis in original); *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216-17 (10th Cir. 2002) (stating that dismissal for lack of personal jurisdiction under Rule 12(b)(2) should be without prejudice).

### C.  Jurisdictional Discovery

The Court next considers Plaintiff's request "to conduct jurisdictional discovery so that a more satisfactory showing of the necessary facts can be made."  (Doc. 11) at 7.  "District courts are endowed with broad discretion over discovery, including whether to grant discovery requests with respect to jurisdictional issues."  *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1233 (10th Cir. 2020).  The Tenth Circuit has made clear that "a district court does not abuse its discretion when it denies a general, unsupported motion for jurisdictional discovery."  *World Wide Ass'n of Specialty Programs & Sch. v. Houlahan*, 138 Fed. Appx. 50, 52 (10th Cir. 2005).  That is because "pure speculation as to the existence of helpful facts is insufficient, as a matter of law, to constitute the type of prejudice" required to justify jurisdictional discovery.  *Dental Dynamics*, 946 F.3d at 1234.  Plaintiff seeks discovery "about, for example, who may be directly liable for the texts and who is in possession of the lead-lists of other phone numbers these texts were sent to."  (Doc. 11) at 8-9.  However, Plaintiff does not

explain how this additional discovery would support a finding of personal jurisdiction over the

out-of-state Defendants, and Plaintiff merely speculates that Defendants even have this

information.  Accordingly, the Court denies Plaintiff's request for jurisdictional discovery.  *See*

*Arnold*, 2017 WL 3534996, at *4 ("Plaintiff's request for discovery illustrates the problem he has

in demonstrating this Court's specific personal jurisdiction over Defendant BPCL, namely that

Plaintiff does not know who called him … ."); *G.A. Resort Condo. Assoc., Inc. v. ILG, LLC*,

2020 WL 5536361, at *9 (D. Colo.) (denying jurisdictional discovery request because the

plaintiff failed "to present a sufficient factual predicate to support its argument that personal

jurisdiction can be established through additional discovery"); *Sur-Tec, Inc. v. CovertTrack Grp.,*

*Inc.*, 2014 WL 1304909, at *3 (D. Kan.) (denying motion for jurisdictional discovery because the

plaintiff's allegations "are speculative and conclusory"); *cf. Miceli*, 2021 WL 1122658, at *1, 5

(allowing jurisdictional discovery because the plaintiff offered evidence suggesting the

defendant's subsidiaries were acting as its agents when they made the calls at issue, such as

identifying themselves as representing the defendant).

## IV.   Defendants' Motion to Dismiss for Failure to State a Claim

Having found the Court lacks jurisdiction over the out-of-state Defendants, the Court

next considers Defendants' Motion to Dismiss for failure to state a claim as to New Mexico

Defendant Mandu Wellness, LLC.  Defendants ask the Court to find that Plaintiff failed to

plausibly allege essential elements for his TCPA claims, such as that Defendants used an auto-

dialer, that Defendants are directly or vicariously liable for the text messages, and that Plaintiff

made an affirmative request to cease communications.  (Doc. 4) at 10-33.  Defendants contend

that Plaintiff's NMUPA claim fails for the same reasons as his TCPA claims.  *Id.* at 33-35.

13

In response, Plaintiff asks the Court to broadly apply the TCPA and NMUPA and find Defendants liable under these statutes for the text messages since they led to the website from which Plaintiff purchased Defendants' product.  (Doc. 11) at 7-22.  Plaintiff argues that Defendants are liable under the TCPA and NMUPA because they have been deceptive about who sent the text messages and how they are linked to the website from which they sell their product.  *Id.*  Plaintiff further states he has adequately plead all essential elements for his TCPA and NMUPA claims.  *Id.* at 22-35.

### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal if the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 555.  Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible."  *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss.  556 U.S. at 678.  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements

14

of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8's pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (citation omitted). In keeping with these two principles, the Court explained:

> A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.*

## B. Discussion

Plaintiff seeks to hold Defendants liable under the TCPA and NMUPA for an unspecified number of text messages sent from unidentified numbers by unidentified parties. Plaintiff alleges Defendants violated the TCPA, 47 U.S.C. § 227(b) and (c), because Defendants or Defendants' agents made telephone solicitations to Plaintiff using an auto-dialer despite the fact that Plaintiff's phone number is listed in the National Do-Not-Call Registry, and that Defendants violated the NMUPA, NMSA § 57-12-22(A), because the texts "cause confusion or misunderstanding as to the source of the goods offered in a manner that may, tends to or does deceive or mislead consumers." (Doc. 1-1) at 18-21. Section 227(b) of the TCPA forbids autodialed calls to a cellular phone without prior consent of the called party, and Section 227(c) prohibits calls to any subscriber on the do-not-call registry. 47 U.S.C. §§ 227(b)(1), (c)(3)(F).

The NMUPA states in the relevant portion that: "A person shall not utilize an automated telephone dialing or push-button or tone-activated address signaling system with a prerecorded message to solicit persons to purchase goods or services unless there is an established business relationship between the persons and the person being called consents to hear the prerecorded message."  NMSA 1978 § 57-12-22(A) (2003).  "Without any guidance from New Mexico case law to interpret Sections 57-12-22(A) and (C), the Court uses the [TCPA] jurisprudence, as allowed under New Mexico law."  *Dency v. Chartrand*, 2019 WL 719762, *4 (D.N.M.) (citing NMSA § 57-12-14, "It is the intent of the legislature that in construing Section 3 of the Unfair Practices Act the courts to the extent possible will be guided by the interpretations given by the federal trade commission and the federal courts.").

Defendants assert that Plaintiff's Amended Complaint fails at the very first elements of the TCPA and NMUPA—that it was Defendants who sent the offending text messages. Defendants argue that Plaintiff's Amended Complaint is devoid of allegations that Defendants are directly or vicariously liable for the text messages, either by sending the text messages or through an agency relationship with the entity that sent the messages.  With regard to direct liability, the plain language of the TCPA "imposes liability upon persons that 'make' a telephone call or text."  *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *2 (D.N.M.) ("*Childress I*") (citing *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *4 (S.D.N.Y.)). Courts interpreting this provision "have held that the verb 'make' imposes civil liability only on the party that places the call or text."  *Id.* (citing *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015) ("By its terms, 47 U.S.C. § 227(b)(1)(A)(iii), assigns civil liability only to the party who 'makes' a call."); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), aff'd, 582 Fed. Appx. 678 (9th Cir. 2014) ("The plain language of

16

the TCPA assigns civil liability to the party who 'makes' a call" and '[d]irect liability is inapplicable here as the parties do not dispute that the actual sender of the text was ... a separate provider of text-message based services.")).  Plaintiff's Amended Complaint contains no factual allegations that Defendant Mandu Wellness actually sent the text messages, and Plaintiff acknowledges he does not know who sent them.  *See* (Doc. 11) at 11 ("The standardized texts Plaintiff received, prior to his purchase, never identified any seller or sponsor of the texts and never provided any means that Plaintiff noticed for a recipient of the texts to make a do-not-call request.").  Accordingly, Plaintiff does not state a claim for direct liability against Defendant Mandu Wellness.

Regarding vicarious liability, "[a] defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it."  *Childress I*, 2018 WL 4684209, at *3 (citing *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) (actions under the TCPA "incorporate federal common law agency principles of vicarious liability" as derived from the Restatement (Third) of Agency)).  "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."  *Id.* (quoting Restatement (Third) of Agency, § 1.01 (2006)).  "[T]o plead vicarious liability under the TCPA in accordance with traditional tort principles, Plaintiff must allege *some* facts regarding the relationship between an alleged principal and agent ... and cannot simply allege general control in a vacuum."  *Id.* (citation omitted, emphasis in original); *see also Mohon v. Nat'l Cong. of Employers Inc.*, 2020 WL 1332376, at *6 (D.N.M.) ("New Mexico Law recognizes vicarious liability and agency theory.") (citation omitted).

According to Plaintiff, the text messages he received did not identify who sent them but, instead, "were designed to arouse the viewer's prurient interest in Defendants' Alpha State 'male enhancement support' product." (Doc. 1-1) at 13. While Plaintiff states he followed a link sent in one of the text messages, which led to an internet site run by Defendant 777 Brands where he purchased a product sold by Defendant Mandu Wellness, Plaintiff does not allege any specific facts regarding a relationship between Defendant Mandu Wellness and any individual or entity allegedly responsible for sending the text messages. Plaintiff does not allege facts regarding a relationship between Defendant Mandu Wellness and an agent who sent the messages or that Defendant Mandu Wellness exerted control over the initiator of the messages. Instead, Plaintiff's statements regarding Defendants' vicarious liability and responsibility for the text messages are not factual allegations—they are legal conclusions that merely recite the elements required to demonstrate an agency relationship. *See, e.g.*, (Doc. 1-1) at 12 ("Defendants […] direct, supervise and implement telemarketing including that unlawfully directed at Plaintiff" and "do not require any of their marketers ('affiliates') to subscribe to or comply with the Registry [and] consciously avoid knowing whether any affiliate subscribes to or complies with the Registry."). The case law is clear that such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice to state a claim and are insufficient to establish an agency relationship between the sender of the text messages and Defendants. *Iqbal*, 556 U.S. at 678.

The Court finds instructive the holding in *Childress I*, where the court rejected the plaintiff's vicarious liability argument and dismissed the plaintiff's TCPA claims. 2018 WL 4684209, at *4. There, the initial telemarketer transferred the plaintiff to the defendant's in-house representative to complete the purchase of a product. The court found these facts

18

insufficient to establish that the defendant exerted control over the initiator of the call, supervised or controlled the initial call, or maintained any sort of relationship with the initiator of the call. *Id.* at *4-5. Consequently, the court found no factual basis to support a finding that the defendant was vicariously liable for the initial call, had the authority or responsibility to prevent or correct the unlawful telemarketing practices, or ratified the unlawful telemarketing. *Id.*

Again in *Barker v. Sunrun, Inc.*, the court granted the defendant's motion to dismiss under Rule 12(b)(6) where the plaintiff made "no factual allegation in the Complaint that connects or fairly traces the phone calls at issue to Sunrun," and instead the plaintiff "only states that he has sworn statements that connect the actions to Sunrun." 2019 WL 1983291, *3 (D.N.M.). The calls in *Barker* were made by various telemarketers who identified themselves as working for companies other than Sunrun. When the plaintiff finally agreed to a meeting at his home, a representative from Sunrun arrived at the appointed time. *Id.* at *2. Considering these facts and the alleged sworn statement (which the plaintiff did not attach to his complaint), the court found the plaintiff failed to sufficiently allege that it was Sunrun who made or directed the calls and, therefore, failed to state a claim under the TCPA or NMUPA. *See id.* at *3 ("Plaintiff's alleged connection, that the offending calls were directed by or at the behest of Sunrun and that these callers were in an alleged agency relationship with Sunrun, constitutes a legal conclusion. As such it cannot be presumed to be true under a 12(b)(6) analysis and, therefore, fails."); *see also Reo v. Carribean Cruise Line, Inc.*, 2016 WL 1109042, at *5 (N.D. Ohio) (dismissing TCPA vicarious liability claim where "the sparse allegations made did not allege any facts that show that defendant had any power to give interim instructions or otherwise had any control over the performance of" alleged third-party callers); *Bank v. Alliance Health Networks, LLC*, 2015 WL 4645317, at *1 (E.D.N.Y.), aff'd, 669 Fed. Appx. 584 (2d Cir. 2016)

19

(complaint in which plaintiff "alleged merely that the calls at issue were made by, or on behalf

of, or with the authorization of the defendants" was insufficient to state a vicarious liability

claim); *Panacci v. A1 Solar Power, Inc.*, 2015 WL 3750112, at *7 (N.D. Cal.) (complaint

dismissed for failure to state a TCPA vicarious liability claim where plaintiff did not allege that

defendant "controlled, authorized, or even knew about [the third party's] phone calls, or that

[defendant] had any control over" the third-party caller and had "virtually no allegations

regarding the relationship between [the defendant] and [the third party]").

      Plaintiff's Amended Complaint has the same defects as those in *Childress I* and *Barker*

because he does not assert factual allegations regarding the relationship between Defendants and

the unknown sender or senders of the text messages.  Because Plaintiff fails to satisfy the first

elements of the TCPA and NMUPA—that Defendants were directly or vicariously liable for the

text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff

adequately plead the other elements of the statutes.  *See Barker*, 2019 WL 1983291, at *4

(declining to address other arguments for dismissal after finding plaintiff did not adequately

plead defendant was liable for the phone calls).  The Court, therefore, grants the Motion to

Dismiss under Rule 12(b)(6) for failure to state a claim for relief as to Defendant Mandu

Wellness, LLC.  Since Plaintiff has already amended his complaint once, and does not ask for

leave to amend a second time, the Court finds it is appropriate to dismiss Plaintiff's claims

against Defendant Mandu Wellness with prejudice.  *See Brereton v. Bountiful City Corp.*, 434

F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint

fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."), citing

*Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir.1997)); *see also Childress I*, 2018 WL

4684209, at *5 (dismissing case with prejudice for failure to state a claim).

V.    **Conclusion**

     For the reasons stated above, the Court finds that it does not have jurisdiction over the out-of-state Defendants 777 Brands, Stickney, and Mandujan, and that Plaintiff has not sufficiently alleged claims for relief against Defendant Mandu Wellness.

     IT IS THEREFORE ORDERED that Plaintiff's Motion to Exceed Page Limits, (Doc. 12), is GRANTED.

     IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, (Doc. 4), is GRANTED.  Plaintiff's claims against Defendants 777 Brands, LLC, Stickney, and Mandujan are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction, and Plaintiff's claims against Defendant Mandu Wellness, LLC are DISMISSED WITH PREJUDICE for failure to state a claim.

     IT IS SO ORDERED.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent

21